UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

_____

KENNETH TYLER SCOTT,

     Plaintiff - Appellant,

v.

WARREN HERN, M.D., acting in his
official and individual capacities; C.
JAN RUNDUS, acting in her official
capacity on behalf of the State of
Colorado; DAVID GRAYBILL, M.D.,
acting individually and in his official
capacity on behalf of the State of
Colorado; MICHAEL NEWELL,
individually and as agent for Warren
Hern, M.D.; GREGORY IDLER, a
police officer acting in his official
capacity for the City of Boulder and
John and Jane Does 1 through 100,
individually and acting individually
and in an official capacity on behalf of
the State of Colorado and political
subdivisions thereof,

     Defendants - Appellees.

_____

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION OF
COLORADO, INC.

     Amicus Curiae.

No. 98-1320

_____

ORDER
Filed July 6, 2000

Before **HENRY**, **LUCERO** and **MURPHY**, Circuit Judges.

This matter is before the court on defendant-appellee C. Jan Rundus's motion for partial modification of the court's June 6, 2000 opinion. The motion is granted. Section III.C. of the court's slip opinion is replaced in its enirety with the following :

The district court also dismissed Scott's false imprisonment claims against Rundus, and Graybill, although for different reasons. We address each in turn.

Finding Graybill's certification for short-term commitment objectively reasonable and authorized by state law, the district court granted summary judgment in favor of Graybill. Graybill diagnosed Scott pursuant to court order, and, viewing the evidence in the light most favorable to Scott, his diagnosis was objectively reasonable. See supra Section II.C. Because Graybill's acts were lawful, the district court properly dismissed the claim of false imprisonment. See Blackman, 759 P.2d at 58 (Colo. Ct. App. 1988).

The district court's denial of Scott's motion to amend his false imprisonment claim against Rundus was improvident. See Grossman , 120 F.3d at 1126 . In his first complaint, Scott stated a false imprisonment claim against Rundus for actions taken in her official capacity. The district court dismissed the claim as barred by the Colorado Governmental Immunity Act, Colo. Rev. Stat. § 24-10-106, because it amounted to an impermissible state common law tort claim against Boulder County. Scott's second amended complaint alleged that Rundus had acted in her individual capacity when committing the acts constituting false imprisonment. The district court failed to acknowledge that, unlike tort claims made against a public official acting in her official capacity, the Colorado Governmental Immunity Act affords only qualified immunity from liability for claims made against a public official in her individual capacity. See Colo. Rev. Stat. § 24-10-118(2)(a); City

of Lakewood v. Brace, 919 P.2d 231, 245-46 (Colo. 1996) (en banc). Specifically, it does not immunize a public employee's "willful and wanton" conduct. Colo. Rev. Stat. § 24-10-118(2)(a). In Brace, the Colorado Supreme Court held the determination of whether conduct is "willful or wanton" "is not susceptible to resolution at an early stage in the litigation process before significant discovery has been undertaken unless there are no disputed issues of fact," and therefore "[a] well pled complaint that an employee acted willfully and wantonly must await determination at trial on the merits." 919 P.2d at 246. Brace, however, did not distinguish the earlier case of Moody v. Ungerer, 885 P.2d 200, 204-05 (Colo. 1994) (en banc), in which the Colorado Supreme Court found as a matter of law that a complaint failed to adequately allege the defendant's actions were willful and wanton.

In the instant case, Scott's second amended complaint asserted that Rundus's improper actions in the prosecution of the civil commitment proceeding were willful and wanton. Given the tension between Brace and Moody as to the propriety of determining the adequacy of allegations of willful and wanton conduct at the motion to dismiss stage, we are reluctant to determine as a matter of law whether the facts alleged in Scott's complaint support his assertion of willful and wanton conduct. We therefore affirm on an alternative ground. See Griess v. Colorado, 841 F.2d 1042, 1047 (10th Cir. 1988).

State prosecutors are "absolutely immune for their actions in initiating a prosecution." Stepanek v. Delta County, 940 P.2d 364, 368 (Colo. 1997) (en banc) (citations omitted). In Stepanek, the Colorado Supreme Court held that a county attorney who filed a petition initiating temporary guardianship proceedings was absolutely immune from an action for attorney fees alleging those proceedings were frivolous. See id. at 368-69. As discussed, see supra Section II.B, Rundus's filing of the petition for evaluation and her investigation of Scott's case are likewise actions "'intimately associated' with the adjudicatory process." Id. at 368 (quoting Imbler, 424 U.S. at 430). Because Rundus is absolutely immune from a suit arising out of these actions, Scott's amendment of his false imprisonment claim would have been futile. See Grossman, 120 F.3d at 1126. Thus, although the district court's reasons for denying his motion to amend were erroneous, we affirm the judgment.

- 3 -

A copy of the modified opinion is attached to this order. This court's mandate of June 28, 2000 is recalled, and the mandate is reissued forthwith.

Entered for the Court

PATRICK FISHER, Clerk of Court

By:
Keith Nelson
Deputy Clerk

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 6 2000**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

KENNETH TYLER SCOTT,

       Plaintiff - Appellant,

v.

WARREN HERN, M.D., acting in his
official and individual capacities; C.
JAN RUNDUS, acting in her official
capacity on behalf of the State of
Colorado; DAVID GRAYBILL, M.D.,
acting individually and in his official
capacity on behalf of the State of
Colorado; MICHAEL NEWELL,
individually and as agent for Warren
Hern, M.D.; GREGORY IDLER, a
police officer acting in his official
capacity for the City of Boulder and
John and Jane Does 1 through 100,
individually and acting individually
and in an official capacity on behalf of
the State of Colorado and political
subdivisions thereof,

       Defendants - Appellees.

_____

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION OF
COLORADO, INC.

       Amicus Curiae.

No. 98-1320

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 96-Z-2919)**

John Fogerty Winston (Andrew B. Reid with him on the briefs), Denver, Colorado, for the appellant.

Howard Bittman, Boulder, Colorado, for the appellee Warren Hern.

Andrew Ringel (Pamela Skelton on the brief) of Hall & Evans, L.L.C., Denver, Colorado, for the appellee David Graybill, M.D.

Jennifer L. Veiga (Dennis A. Hanson with her on the brief), of Wood, Ris & Hames, P.C., Denver, Colorado, for the appellee Michael Newell.

Theodore S. Halaby and Jon A. Halaby of Halaby, Cross & Schluter, Denver, Colorado, filed a brief for appellee Gregory Idler.

Marc F. Colin, and R. Stephen Hall of Bruno, Bruno & Colin, P.C., Denver, Colorado, filed a brief for appellee C. Jan Rundus.

Lori Potter of Kelly, Haglund, Garnsey & Kahn, LLC, Denver, Colorado, filed a brief for Amicus Curiae ACLU Foundation of Colorado.

Before **HENRY**, **LUCERO** and **MURPHY**, Circuit Judges.

**LUCERO**, Circuit Judge.

Plaintiff-appellant Kenneth Scott filed suit against individuals who participated in his involuntarily commitment to a mental institution, alleging a dizzying array of violations of 42 U.S.C. § 1983 and related violations of state law. His appeal from the dismissal of those claims raises three important issues.

We first reject the proposition that the state action requirement of a § 1983 claim is satisfied when a licensed physician submits an affidavit to law enforcement officials in support of involuntary commitment. We also address whether a county attorney has absolute immunity from a § 1983 claim arising from her role in civil commitment proceedings, and conclude she does. Finally, we review the district court's conclusion that the First Amendment right to petition affords immunity from liability for claims of abuse of process and false imprisonment based on the submission of a petition for involuntary commitment. Applying our recent decision in Cardtoons v. Major League Baseball Players Association, 208 F.3d 885 (10th Cir. 2000) (en banc), we conclude that the First Amendment does not impose any additional limits on those tort claims because, as construed by the Colorado courts and as applied to the facts of this case, they do not impose liability for the petitioning activity at issue. We affirm the remaining aspects of the district court's judgment.

**I**

Scott is an anti-abortion activist who frequently demonstrated in front of an abortion clinic in Boulder, Colorado, operated by defendant-appellee Dr. Warren Hern. On December 18, 1995, Hern prepared a sworn affidavit with the assistance of defendant-appellee C. Jan Rundus, Assistant Boulder County Attorney, stating that he had "become increasingly concerned with the recent

behavior of a protestor named Kenneth T. Scott." (Appellant's App. at 107.) He then set forth the following reasons for his concern: Scott had been arrested at least twenty-one times in the past seven years, often in relation to his anti-abortion activities and at least once for felony assault; Scott had been imprisoned for violating a restraining order obtained by the Denver Planned Parenthood clinic; Scott had made numerous threatening statements directed towards Hern, including "Warren, how many days do you have left?  The Lord showed me you have less than one year.  One year and he's gonna take your life." (     id.); Scott was a survivalist and expert marksman who, according to his wife, owned numerous guns; a mental health report dated October 7, 1991, diagnosed Scott with narcissistic personality disorder and noted that Scott had been hospitalized at least four times for psychiatric reasons; a second mental health report dated May 4, 1994, diagnosed Scott with bi-polar disorder depressed with psychotic features, albeit in remission; a "Behavioral Profile and Threat Analysis" dated February 7, 1995, stated that Scott "is exhibiting a general disregard for rules and pro social behaviors. . . .  [I]ndividuals who are perceived as going against his belief system [are] a likely target." (   id.); a report by defendant-appellee Detective Greg Idler of the Boulder Police Department described an incident in which Scott became "instantly enraged" and started yelling "in a strange tongue," (     id. at 109); and Scott succeeded in locating and placing anti-abortion posters near Hern's

mountain cabin in Gilpin County. Hern concluded by stating, "I believe that he is a danger to others and perhaps gravely disable [sic] as a result of his mentally ill, religious obsessions with me and the abortion rights issue. I believe that his condition is serious enough to warrant an evaluation." ( Id. at 110.) Hern obtained the two mental health reports and the behavioral profile and threat analysis from unnamed "law enforcement officials," identified in Scott's complaint as John and Jane Does 1-100. ( Id. at 108.) Hern also employed a private investigator, defendant-appellee Michael Newell, who furnished Hern with some of the information contained in the affidavit.

Rundus filed a petition and Hern's affidavit with the Boulder County District Court on December 18, 1995. The petition requested the court to order that Scott be taken into custody for a seventy-two-hour treatment and evaluation pursuant to Colo. Rev. Stat. § 27-10-105(1)(b). The court issued the requested order the same day.

On December 20, 1995, Idler, acting pursuant to the court's order, took Scott into custody. Following an initial evaluation at the Boulder Mental Health Facility, Scott was transferred to the Colorado Mental Health Institute ("CMHI") at Fort Logan, Colorado. Upon admission, Dr. Qwick diagnosed Scott as "[b]ipolar, hypomanic-homicidal" and estimated that he would need to remain in treatment for two to four weeks. (II J. Supp. App. at 518.) The following day,

Dr. Levy made a tentative diagnosis of bipolar illness and hypomania but noted that more data was necessary to determine if Scott was dangerous. Based on the foregoing information as well as a separate interview, on December 22, 1995, defendant-appellee Dr. David Graybill found that Scott was a danger to himself and others and gravely disabled and certified Scott for short-term (not to exceed three months) involuntary treatment pursuant to Colo. Rev. Stat. § 27-10-107. Seven days later, Scott's attorney requested that the court review the certification for short-term treatment. See Colo. Rev. Stat. § 27-10-107(6). On January 30, 1996, forty-one days after his commitment and before the review hearing, Dr. Graybill determined that Scott no longer met the criteria for continued involuntary treatment and authorized his release.

On the same day he submitted his affidavit to the Boulder County Attorney, Hern sought and obtained a temporary restraining order ("TRO") from the Gilpin County Court. The TRO prohibited Scott from, inter alia, interfering with Hern and excluded Scott from Hern's primary residence, Hern's mountain cabin, and Hern's clinic. A hearing to determine whether the TRO should be made permanent was set for January 2, 1996. Scott's attorney entered a written appearance and filed a motion for continuance, but he did not appear on January 2. At the hearing, the court denied the motion for continuance, heard additional

evidence, and in conclusion issued a permanent restraining order. Scott's subsequent challenges to the permanent restraining order were unsuccessful.

Scott initiated the present action in the United States District Court for the District of Colorado on December 17, 1996. Scott raised numerous federal and state law claims, all of which were dismissed under Fed. R. Civ. P. 12(b)(6) or resolved on summary judgment under Fed. R. Civ. P. 56. On appeal, Scott seeks to have this court reinstate numerous claims: (1) violations of 42 U.S.C. § 1983 against Hern, Newell, Rundus, Graybill, Idler, and John and Jane Does; (2) outrageous conduct against Hern, Rundus, and Graybill; (3) false imprisonment against Hern, Rundus, and Graybill; (4) abuse of process against Hern; and (5) invasion of privacy against Hern and Newell.

## II

We first address Scott's § 1983 claims against Hern, Newell, Rundus, Graybill, Idler, and certain unnamed police officers. In his complaint, Scott alleged that each of these individuals violated his constitutional rights to be free from unreasonable search and seizures, freedom of speech, liberty, equal protection of the laws, and/or due process of the law by their participation in the civil commitment proceedings. He also alleged that Hern, Newell, and Idler deprived him of due process of law in relation to the restraining order proceedings.

## A

Holding that Hern and Newell did not act under color of state law, the district court dismissed the § 1983 claims against them under Fed. R. Civ. P. 56 and 12(b)(6), respectively. [1] The district court also denied Scott's motion to amend those claims because the proffered amended complaint failed to cure the deficiencies. We review de novo the grant of summary judgment. See Jenkins v. Wood, 81 F.3d 988, 990 (10th Cir. 1996). Applying the same standard as the district court, we view the evidence and the inferences that can be drawn therefrom in the light most favorable to the non-moving party and determine whether there is a genuine issue as to any material fact and whether the movant is entitled to judgment as a matter of law. See id. We likewise review de novo a dismissal for failure to state a claim, "accepting as true all the well-pleaded facts of the complaint and construing them in the light most favorable to the plaintiff." Gaines-Tabb v. ICI Explosives, USA, Inc., 160 F.3d 613, 619 (10th Cir. 1998) (citing Bauchman v. West High School, 132 F.3d 542, 550 (10th Cir. 1997)). Denial of a motion to amend a complaint is reviewed for abuse of discretion. See Grossman v. Novell, Inc., 120 F.3d 1112, 1126 (10th Cir. 1997). If the proffered amendments fail to cure the deficiencies of the original complaint or if the newly

---

[1] The district court treated Hern's motion to dismiss for failure to state a claim as a motion for summary judgment pursuant to Fed. R. Civ. P. 12(c). Scott does not challenge that treatment of the motion.

asserted claims would be futile, denial of a motion to amend is appropriate.    See id.

To state a cause of action under 42 U.S.C. § 1983 for an alleged violation of the Fourteenth Amendment and provisions of the Bill of Rights incorporated into the Fourteenth Amendment, the challenged conduct must constitute state action.  See Lugar v. Edmondson Oil Co.   , 457 U.S. 922, 930-32 (1982);    Pino v. Higgs, 75 F.3d 1461, 1464 (10th Cir. 1996).  Where, as here, a § 1983 claim is based on the conduct of a private individual, that conduct constitutes state action if it is "'fairly attributable to the state.'"  Pino, 75 F.3d at 1465 (quoting Lugar, 457 U.S. at 937).  A private individual's conduct is "fairly attributable to the state" if two conditions are met:

> "First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the state is responsible.  Second, the private party must have acted together with or . . . obtained significant aid from state officials or engaged in conduct otherwise chargeable to the State."

Id. (quoting Wyatt v. Cole, 504 U.S. 158, 162 (1992) (internal quotations and citation omitted)).[2]

_____

[2] The Supreme Court has applied various tests to determine if the conduct of a private individual is state action.  See Gallagher v. "Neil Young Freedom Concert", 49 F.3d 1442, 1447-57 (10th Cir. 1995) (discussing the tests). Regardless of the test applied, the elements outlined in Pino must be present for conduct to be considered state action.  See id. at 1447-48.

A private individual does not engage in state action simply by availing herself of a state procedure. <u>Pino</u> involved an alleged violation of § 1983 arising from an involuntary commitment in New Mexico. 75 F.3d at 1463-64. One of the defendants was a private therapist who called the police and advised them that the plaintiff should be hospitalized. See <u>id.</u> at 1465. We held that the private therapist did not exercise "some right or privilege" or act under a "rule of conduct" created by state law when she made a report "of noncriminal activities requiring a response from state officials." <u>Id.</u> at 1465-66; <u>see also</u> <u>Bass v. Parkwood Hosp.</u>, 180 F.3d 234, 242 (5th Cir. 1999) ("A private citizen does not become a state actor by initiating civil commitment procedures against another person.") (citation omitted); <u>cf.</u> <u>Carey v. Continental Airlines, Inc.</u>, 823 F.2d 1402, 1404 (10th Cir. 1987) (holding that complaining to a police officer about an individual's conduct does not constitute state action simply because the officer arrests that individual following questioning).

Hern's submission of the affidavit is no different than the actions of the therapist in <u>Pino</u>: He did "nothing more than provide information which" Rundus and the county judge "considered in making their independent judgments." <u>Id.</u> at 1466. Contrary to Scott's suggestion, the use of a state procedure does not become state action simply because the person using the procedure is a licensed professional such as a physician. See <u>id.</u> (holding that the private physician who

- 10 -

certified the defendant for transportation pursuant to the civil commitment statute was not a state actor).  Put another way, it is not the case that Hern's "official character is such as to lend the weight of the State to his decisions." Lugar, 457 U.S. at 937.  Although Hern is a licensed physician, he was not employed by the state, and he submitted the affidavit pursuant to a statutory scheme applicable to any citizen.  See Blum v. Yaretsky, 457 U.S. 991, 1012 (1982) (holding that the decisions of physicians and administrators of a privately owned and operated nursing home to transfer Medicaid patients was not state action).[3]  Most of Newell's alleged conduct—surveillance of Scott and preparation and deliverance to Hern of a report allegedly containing false and misleading information with the knowledge that Hern would use the report to invoke civil commitment proceedings against Scott—is even further removed from the civil commitment procedure than Hern's conduct and therefore also lacks the requisite state action. The district court properly denied Scott's claims arising from these actions.

---

[3]  Scott's attempt to establish that Hern was a state actor under the joint action theory is equally unavailing.  See Lee v. Estes Park, 820 F.2d 1112, 1115 (10th Cir. 1987) (holding that the private individual who placed the plaintiff under civilian arrest and took him to the police station was not "jointly engaged with state officials" because the police officer made the independent judgment to charge the plaintiff with an offense).

Scott also sought to establish state action by alleging that Hern conspired with state officials to deprive him of his constitutional rights.[4]  "When a plaintiff in a § 1983 action attempts to assert the necessary 'state action' by implicating state officials or judges in a conspiracy with private defendants, mere conclusory allegations with no supporting factual averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action." See Sooner Prods. Co. v. McBride, 708 F.2d 510, 512 (10th Cir. 1983) (citing Clulow v. Oklahoma, 700 F.2d 1291, 1303 (10th Cir. 1983)).  We have continued to apply this heightened pleading requirement to § 1983 claims alleging a conspiracy between private individuals and state officials even after Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 166 (1993), in which the Supreme Court declined to apply a heightened pleading standard to § 1983 claims against municipalities.  See Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 533 (10th Cir. 1998).

---

[4]  In both his complaint and second amended complaint, Scott alleges Newell "conspired with police officers to obtain and use information of confidential medical records of the plaintiff to support his report or reports to defendant Hern."  (I J. Supp. App. at 25 (Complaint); Appellant's App. at 88 (Second Amended Complaint)).  On appeal, however, Scott wholly fails to raise the argument that this conspiracy provides the requisite state action for his § 1983 claim against Newell, and therefore any such argument is waived.  See Hernandez v. Starbuck, 69 F.3d 1089, 1093 (10th Cir. 1995).

In his amended complaint, Scott alleged that Hern acted in concert with Rundus and unnamed "state officials." (Appellant's App. at 69-71.) Nowhere in the section of the complaint setting out the § 1983 claim against Hern, however, does Scott provide factual averments as to the nature of those concerted activities, other than Rundus's role in preparing and submitting the affidavit. Although a subsequent section of the complaint pertaining to the claims against John and Jane Does contains a more specific allegation—that the aforementioned unnamed officers "turned over" Scott's medical records to "defendant Hern and/or his agent Newell" (Appellant's App. at 92)—that allegation was not realleged or incorporated by reference with respect to the § 1983 claim against Hern. Cf. International Mktg., Ltd. v. Archer-Daniels-Midland Co., Inc., 192 F.3d 724, 732 (7th Cir. 1999) (holding that allegations not incorporated into the portion of the complaint setting forth the challenged claim could not cure the insufficient pleading of that claim). As pleaded, the allegations of conspiracy against Hern are wholly conclusory. Because such allegations could not survive dismissal, amendment would have been futile and leave to amend was properly denied. See Sooner Prods. Co., 708 F.2d at 512.

Finally, we reject Scott's claim that Hern and Newell violated his constitutional rights by preventing him from participating in the permanent restraining order hearing. This claim fails because Scott's inability to participate

- 13 -

in those proceedings was the result of his commitment, and, as discussed, Hern

and Newell's roles in his commitment did not constitute state action.

**B**

In his proffered second amended complaint, Scott's § 1983 claim against

Rundus alleged the following conduct by her caused the deprivation of his

constitutional rights: (1) assisting Hern in the preparation of his affidavit; (2)

failing to fully investigate Scott's mental status, in particular failing to

investigate the allegations in Hern's affidavit in light of the conflict of interest

she knew existed between Hern and Scott; (3) relying on medical records she

knew or should have known were illegally obtained; and (4) moving to suppress

evidence of Scott and Hern's political conflict.[5]  The district court denied Scott's

motion to amend his § 1983 claim against Rundus on grounds of absolute

immunity.  We review determinations of absolute immunity de novo.  See Gagan

v. Norton, 35 F.3d 1473, 1475 (10th Cir. 1994).

"[S]tate attorneys and agency officials who perform functions analogous to

those of a prosecutor in initiating and pursuing civil and administrative

enforcement proceedings" are "absolutely immune from suit under section 1983

---

[5]  Because Scott did not allege in his second amended complaint, as he now
does in his appellate brief, that Rundus's witness list contained false information,
we decline to review the merits of that claim.  See Sac & Fox Nation v. Hanson,
47 F.3d 1061, 1063 (10th Cir. 1995) (stating that this court will not review an
issue raised for the first time on appeal).

concerning activities 'intimately associated with the judicial . . . process.'"

Pfeiffer v. Hartford Fire Ins. Co., 929 F.2d 1484, 1490 (10th Cir. 1991) (quoting

Imbler v. Pachtman, 424 U.S. 409, 430-31 (1976)). Absolute immunity does not

extend to actions "that are primarily investigative or administrative in nature,"

though it "may attach even to such administrative or investigative activities

'when these functions are necessary so that a prosecutor may fulfill his function

as an officer of the court.'" Id. (quoting Snell v. Tunnell, 920 F.2d 673, 693

(10th Cir. 1990)). In drawing this distinction, we are guided by the following

principle: "The more distant a function is from the judicial process and the

initiation and presentation of the state's case, the less likely it is that absolute

immunity will attach." Id. (citing Snell, 920 F.2d at 687). Investigative acts that

fall outside the scope of absolute immunity are accorded qualified immunity. See

id. at 1490 n.6.[6]

The question is whether, applying this functional analysis, the allegedly

improper actions by Rundus were "intimately associated" with the civil

commitment proceedings. Imbler, 424 U.S. at 430. Rundus's alleged failure to

---

[6] On appeal, Scott argues that Rundus is not entitled to absolute immunity because she failed to perform her non-discretionary duty under Colo. R. Civ. P. 11 to conduct a reasonable inquiry into the legal and factual basis of the petition for a seventy-two-hour evaluation. As discussed, however, "in determining whether the functions of . . . prosecutors are entitled to absolute immunity," we focus on a function's proximity to the judicial process, not whether it is discretionary. Buckley v. Fitzsimmons, 509 U.S. 259, 269 (1993).

- 15 -

fully investigate Scott's mental health, reliance on medical records she knew or should have known had been unlawfully obtained, and efforts to suppress evidence clearly fit that description. In Pfeiffer, a physician who had been disciplined by the Colorado State Board of Medical Examiners brought suit against various participants in the disciplinary proceedings, including attorneys in the state attorney general's office who prepared the case against him. We held "[t]here is no question in this circuit that prosecutors are absolutely immune from liability for allegedly failing to conduct an adequate, independent investigation of matters referred to them for prosecution." Id. at 1490 (citing Martinez v. Winner, 771 F.2d 424, 437 (10th Cir. 1985)). Like the attorneys in Pfeiffer, Rundus was acting pursuant to her statutory obligation to conduct the commitment proceedings once the petition for a seventy-two-hour evaluation had been submitted, see Colo. Rev. Stat. § 27-10-111(5), and she is absolutely immune from suit concerning her actions and omissions related to the fulfilment of that obligation. That immunized conduct includes her investigation, or lack thereof, see Pfeiffer, 929 F.2d at 1490, her reliance on the medical reports, see Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993) (holding that a prosecutor acts in his role as advocate when he "evaluat[es] evidence . . . as he prepares for trial"), and her motion to suppress, see Imbler, 424 U.S. at 430-31 (applying absolute immunity to a prosecutor's alleged unconstitutional suppression of material evidence).

Rundus's role in preparing and submitting the petition for a seventy-two-hour evaluation also falls under the umbrella of absolute prosecutorial immunity. After her conversation with Hern, Rundus's office prepared the affidavit, which Hern signed under penalty of perjury. Rundus then attached the affidavit to an unsworn petition for evaluation, which she submitted to the Boulder County District Court. The Supreme Court has held that similar actions merit absolute immunity. See Kalina v. Fletcher, 522 U.S. 118 (1997). The county attorney in Kalina commenced a criminal proceeding by filing three documents: an information; a motion for an arrest warrant; and a sworn affidavit supporting the motion for an arrest warrant. See id. at 121. The Court held that the attorney's actions in connection with the preparation and filing of the former two documents were the first steps of the prosecutorial process and therefore protected by absolute immunity. See id. at 128-29. Absolute immunity did not bar, however, an action based on the alleged false statements in the sworn affidavit. See id. at 130-31. While the Kalina attorney's drafting of the affidavit and determining that the facts contained therein were sufficient to support probable cause were integral to the initiation of the prosecution, she stepped outside the role of prosecutor and into the role of complaining witness when she attested to the truth of those facts. See id. at 130.

- 17 -

By contrast to the attorney in <u>Kalina</u>, Rundus never stepped outside her prosecutorial role: She drafted an affidavit containing Hern's allegations without augmentation or further investigation, prepared a petition matching those allegations to the relevant statutory language, and submitted the petition to the court, but she did not attest to the truth of those allegations. <u>Cf.</u> <u>Snell</u>, 920 F.2d at 694 (holding that an attorney who, at the request of a judge, filed an application for conditional protective custody that allegedly contained false information acted in her prosecutorial role because in preparing and presenting the application the attorney simply "matched the existing allegations with citations to . . . statutes," and did not "pursue further investigation" or "originate[] or augment[] the false information which was contained in the application"). We therefore conclude that the district court did not err when it dismissed Scott's § 1983 claim against Rundus on the basis of absolute immunity.

## C

In his § 1983 claim against Graybill, Scott alleges the psychiatrist based the certification for short-term involuntary treatment on a knowingly erroneous diagnosis. Treating Graybill's motion to dismiss as a motion for summary judgment, the district court held that Scott stated a cognizable § 1983 claim based on the alleged wrongful deprivation of his liberty for the forty-one days he

was involuntarily committed, but had failed to overcome the defense of qualified immunity because Graybill's actions were objectively reasonable.[7]

This Court reviews "the presence or absence of qualified immunity de novo." Pino, 75 F.3d at 1467. "When a defendant pleads qualified immunity, the plaintiff has the heavy burden of establishing: (1) that the defendant's actions violated a federal constitutional or statutory right; and (2) that the right violated was clearly established at the time of the defendant's actions." Greene v. Barrett, 174 F.3d 1136, 1142 (10th Cir. 1999) (citing Horstkoetter v. Department of Pub. Safety, 159 F.3d 1265, 1277-78 (10th Cir. 1998)).

The Due Process Clause prohibits a state from involuntarily committing an individual unless he is a danger to himself or others. See O'Connor v. Donaldson, 422 U.S. 563, 575 (1975) ("[T]here is . . . no constitutional basis for confining [mentally ill] persons involuntarily if they are dangerous to no one and can live safely in freedom."). Consequently, we have held that a state official is not entitled to qualified immunity if "there is a genuine issue of material fact

---

[7] We do not review the district court's related determination that Scott failed to adequately allege a deprivation of his rights to free speech, exercise of religion, or equal protection. While Scott has appealed that ruling, his brief is entirely void of citations to the record or relevant case law to support his conclusory argument that such constitutional violations occurred. See National Commodity & Barter Ass'n v. Gibbs, 886 F.2d 1240, 1244 (10th Cir. 1989) (holding that we are "not required to manufacture a party's argument on appeal when it has failed in its burden to draw our attention to the error below").

concerning whether a reasonable person, exercising professional judgment and possessing the information before the defendant[], would have believed that [an individual was a danger to himself or others]." Walters v. Western State Hosp., 864 F.2d 695, 699 (10th Cir. 1988) (applying this standard in a case alleging unconstitutional involuntary administration of psychotropic medication) (citing Anderson v. Creighton, 483 U.S. 635 (1987)); see also Glass v. Mayas, 984 F.2d 55, 57 (2d Cir. 1993).

Viewing the evidence in the light most favorable to Scott, Graybill's diagnosis and certifications were objectively reasonable. Graybill possessed the following information at the time he determined that Scott was gravely disabled and represented a danger to himself and others: the Hern affidavit describing in detail Scott's threatening behavior; an evaluation conducted by mental health professionals at Boulder Mental Health Center immediately following Scott's detainment finding interrupted speech, tangential thinking, loose associations, and an intimidating stance towards the interviewer; medical records demonstrating a history of mental illness; Dr. Qwick's diagnosis of Scott as "[b]ipolar, hypomanic-homicidal" (II Joint Supp. App. at 518); Dr. Levy's tentative diagnosis of bipolar illness and hypomania, which also noted that more data was necessary to determine if Scott was dangerous; and his personal observations. We find that a reasonable person exercising professional judgment

in light of this information would have reached the same conclusion as Graybill. Contrary to Scott's suggestion, Dr. Levy's diagnosis, though tentative, is consistent with Graybill's. Similarly, evidence that Scott was permitted to retain sharp objects and receive visitors with limited supervision during his time at CMHI and that Graybill subsequently found Scott no longer posed a danger to himself or others has no relevance to the objective reasonableness of his initial determination and therefore fails to create a genuine issue of material fact.

**D**

We next address Scott's appeal from the district court's denial of his motion to amend his § 1983 claim against Idler. The proffered amendment alleged that Idler willfully, wantonly, and maliciously prepared a report falsely characterizing Scott as prone to abrupt mood swings and provided that report to Hern knowing it "could bolster" Hern's efforts to have Scott committed, and that Idler testified falsely during the permanent restraining order hearing. (Appellant's App. at 38-40.) The district court denied the motion to amend because Scott failed to plead a direct link between Idler's allegedly false report and a deprivation of his constitutional rights, and Idler's testimony at the permanent restraining order hearing was protected by absolute immunity.

Both of the district court's conclusions are correct. A plaintiff must allege factual causation—i.e. "but for" causation—in order to state a claim under

- 21 -

§ 1983. See Northington v. Marin, 102 F.3d 1564, 1568-69 (10th Cir. 1996). "'If two forces are actively operating, one because of the actor's negligence, the other not because of any misconduct on his part, and each of itself is sufficient to bring about harm to another, the actor's negligence may be found to be a substantial factor in bringing it about.'" Id. (quoting Restatement (Second) of Torts § 432(2)). While Scott baldly alleged that Idler's report was the "direct and proximate cause" of the deprivation of his constitutional rights, the facts alleged in his complaint demonstrate otherwise. Assuming that Idler included false statements in his report and then gave that report to Hern knowing it would be used to seek Scott's involuntary commitment, it simply is not the case that, but for Idler's preparation and provision of the report, Scott would not have been committed. See Northington, 102 F.3d at 1568. Hern's affidavit contained considerable amounts of additional information supporting the conclusion that Scott was a threat to the safety of others. And even if Idler's report was sufficient in itself to support Scott's commitment, it was not a substantial factor because it was insignificant in relation to the other facts set forth in the affidavit. See id. at 1569. Finally, Idler has absolute immunity from any claim arising out of his testimony at the permanent restraining order hearing. See Briscoe v. LaHue, 460 U.S. 325, 328, 342-44 (1983) (holding that police officers have absolute immunity for testimony at trial, even if perjurious). Because amending

the complaint with regard to the § 1983 claims against Idler would be futile, the district court did not abuse its discretion in denying the motion to amend. See Grossman, 120 F.3d at 1126.

**E**

Scott's final § 1983 claim alleges that John and Jane Does, unnamed police officers, violated his constitutional rights by giving his confidential medical records to Hern and/or Newell without his consent. The district court dismissed without prejudice these claims because Scott had failed to identify or serve these defendants. While this order is characterized as a dismissal for failure to prosecute, implicitly invoking Fed. R. Civ. P. 41(b), we construe it as falling under the more precisely applicable Fed. R. Civ. P. 4(m), which authorizes dismissal without prejudice for failure to effect service within 120 days after the filing of the complaint.

We review for abuse of discretion a district court's dismissal for failure to effect service. See Espinoza v. United States, 52 F.3d 838, 840 (10th Cir. 1995). In Espinoza, we delineated the inquiry a district court should make before dismissing a claim pursuant to Rule 4(m):

> The preliminary inquiry to be made under Rule 4(m) is whether the plaintiff has shown good cause for the failure to timely effect service. . . . If good cause is shown, the plaintiff is entitled to a mandatory extension of time. If the plaintiff fails to show good cause, the district court must still consider whether a permissive extension of time may be warranted. At that point the district court

- 23 -

> may in its discretion either dismiss the case without prejudice or extend the time for service.

Id. at 841.

The record before us on this matter is limited to Scott's complaint, which was filed on December 17, 1996, and the district court docket sheet. From the docket sheet, we discern that on March 18, 1997, 120 days after Scott filed his complaint, the district court issued an order to show cause why his action should not be dismissed as to Jane and John Does. Scott filed two responses to this order. The next docket entry concerning the matter is the district court's June 23, 1998, order to dismiss without prejudice. Based on this limited record, it appears the district court made a preliminary inquiry into whether Scott had good cause for the failure to effect service. The record is wholly insufficient, however, to permit us to review the district court's implicit finding that Scott failed to show good cause because we have no way of knowing the grounds for cause asserted by Scott below. Where the record is insufficient to permit review we must affirm. See Deines v. Vermeer Mfg. Co., 969 F.2d 977, 979-80 (10th Cir. 1992); cf. Figueroa v. Rivera, 147 F.3d 77, 83 (1st Cir. 1998) (holding, in the alternative, that dismissal was proper pursuant to Rule 4(m) where the plaintiff failed to identify and serve an unknown defendant within 17 months of filing the complaint).

In the alternative, we reject the grounds for cause asserted on appeal. Scott alleges that because discovery was stayed pending the resolution of the named parties' motions to dismiss, he never had an opportunity to identify the police officers in question. Even if that argument was properly preserved, it fails to establish cause. In fact, on June 26, 1997, the district court ordered discovery to commence on the question of how the medical records were obtained. Therefore, Scott had nearly an entire year of discovery before the district court dismissed this claim.

### III

In addition to his § 1983 claims, Scott brought state law claims of outrageous conduct and false imprisonment against Hern, Rundus, and Graybill, abuse of process against Hern, and invasion of privacy against Hern and Newell.

### A

The district court dismissed Scott's outrageous conduct claim against Hern, Graybill, and Rundus based on its conclusion that, even if all of the facts alleged in the complaint were true, as a matter of law the defendants' conduct failed to rise to the required level of outrageousness under Colorado law. [8]

---

[8] Specifically, the district court granted Rundus's motion to dismiss for failure to state a claim upon which relief can be granted, converted Hern's motion to dismiss to a motion for summary judgment, which it then granted, and then denied Scott's motion to amend his complaint with respect to Hern, Rundus, and

(continued...)

- 25 -

"Liability for outrageous conduct exists where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Bauer v. Southwest Denver Mental Health, 701 P.2d 114, 118 (Colo. Ct. App. 1985) (citing Rugg v. McCarty, 476 P.2d 753 (Colo. 1970)). We take the district court's view that the alleged misconduct of Rundus, Hern, and Graybill, falls far short of being atrocious and utterly intolerable. Accepting as true the well-pleaded facts in Scott's second amended complaint, Rundus and Graybill's failures to conduct more thorough investigations were at most unreasonable. With respect to Hern's purportedly nefarious affidavit, Scott alleges it "contains several false statements" about him. (Appellant's App. at 60.) The only facts Scott denies outright, however, are that he is a marksman,

---

[8](...continued)
Graybill. Contrary to the district court's assertion in its order denying the motion to amend, it never dismissed the outrageous conduct claim against Graybill at the earlier time. Rather, that claim was withdrawn voluntarily. Such an error is harmless, however, when the record contains an apparent reason justifying the denial of the motion to amend. See Long v. United States, 972 F.2d 1174, 1183 (10th Cir. 1992). Because we conclude that Scott's allegation of outrageous conduct against Graybill failed to state a claim for which relief can be granted, such a justification exists here. See Ketchum v. Cruz, 961 F.2d 916, 920 (10th Cir. 1992) (futility of amendment is adequate justification to refuse to grant leave to amend); Griess v. Colorado, 841 F.2d 1042, 1047 (10th Cir. 1988) ("[W]e are 'free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court.'") (quoting Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir. 1987)) (further citations omitted).

survivalist, and member of an organization that published a "hit list" containing Hern's name. Even if Hern knew these statements were false when he included them in his affidavit, that conduct cannot be regarded as utterly intolerable given that the remaining facts contained therein would be more than sufficient to justify a reasonable person both in concluding that Scott is a danger to others as a result of his mental illness and in filing an affidavit seeking temporary evaluation and treatment. See Colo. Rev. Stat. § 27-10-105(1)(b). Scott fails to cite a single case in the relevant section of his brief, let alone a case militating against the conclusion that conduct of the sort alleged in his complaint is not outrageous as a matter of law. Therefore, the district court properly dismissed the outrageous conduct claims.

**B**

Asserting that the First Amendment right to petition protects anyone who invokes the aid of the government through an established judicial process such as civil commitment proceedings, the district court granted Hern summary judgment on Scott's claims of abuse of process and false imprisonment. In reaching that conclusion, the court relied on the Noerr-Pennington doctrine, which provides immunity from antitrust liability for petitions to the courts, provided those petitions are objectively reasonable. See Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49, 60-61 (1993).

After the district court entered its judgment and during our review on appeal, this Court handed down its decision in <u>Cardtoons v. Major League Baseball Players Association</u>, 208 F.3d 885, 888-891 (10th Cir. 2000) (en banc), which discussed the application of the <u>Noerr</u>-<u>Pennington</u> doctrine outside the antitrust context. The question before the en banc court was whether the Petition Clause immunized the defendant from state tort liability based on statements made in a cease-and-desist letter sent to a private party. <u>See id.</u> at 886-87. The en banc court ultimately concluded such letters are not shielded by the First Amendment because they are not petitions to the government, <u>see id.</u> at 893. In reaching that conclusion, we cautioned that, because the <u>Noerr</u>-<u>Pennington</u> doctrine was based on both statutory interpretation and constitutional principles, care must be taken when drawing right to petition principles from <u>Noerr</u>-<u>Pennington</u> antitrust cases. <u>See id</u> at 889-91. "'[T]he purpose of <u>Noerr</u>-<u>Pennington</u> as applied in areas outside the antitrust field is the protection of the right to petition.'" <u>Id.</u> at 889 (quoting <u>WE, Inc. v. City of Philadelphia</u>, 174 F.3d 322, 326-27 (3d Cir. 1999)).

Seen through the lens of <u>Cardtoons,</u> the issue before us is whether tort liability for abuse of process or false imprisonment would infringe or chill Hern's First Amendment right to petition the courts for redress of grievances. As the District of Columbia Circuit has stated, "it is hard to see any reason why, as an abstract matter, . . . common law torts . . . might not in some of their applications

- 28 -

be found to violate the First Amendment." Whelan v. Abell, 48 F.3d 1247, 1254 (D.C. Cir. 1995).  Indeed, the Supreme Court has held the Petition Clause imposes limitations on liability for libel based on statements contained in a petition to the President, consistent with the limitations imposed by other First Amendment rights.  See McDonald v. Smith, 472 U.S. 479, 484-85 (1985) (citing New York Times Co. v. Sullivan, 376 U.S. 254 (1964)).  Numerous other courts have likewise held that the Petition Clause places limits on liability for the commission of a range of common law torts.  See Cheminor Drugs, Ltd. v. Ethyl, Corp., 168 F.3d 119, 128 (3d Cir.) (malicious prosecution, tortious interference with contract, tortious interference with prospective economic advantage, and unfair competition), cert. denied, 120 S. Ct. 173 (1999); South Dakota v. Kansas City S. Indus., Inc., 880 F.2d 40, 50 & n.24, 53-55 (8th Cir. 1989) (tortious interference with contract);   Video Int'l Prod., Inc. v. Warner-Amex Cable Communications      , 858 F.2d 1075, 1084 (5th Cir. 1988) (tortious interference with contractual relations);   Havoco of Am., Ltd. v. Hollobow    , 702 F.2d 643, 649-50 (7th Cir. 1983) (tortious interference with business relationships)       ; Suburban Restoration Co. v. ACMAT Corp., 700 F.2d 98, 101-02 (2d Cir. 1983) (tortious interference with a business expectancy); Computer Assocs. Int'l, Inc. v. American Fundware, Inc., 831 F.Supp. 1516, 1523 (D. Colo. 1993) (unfair competition); Pennwalt Corp. v. Zenith Lab., Inc.   , 472 F. Supp. 413, 424 (E.D. Mich. 1979) (tortious interference

- 29 -

with business relationships and abuse of process), appeal dismissed , 615 F.2d 1362 (6th Cir. 1980); Sierra Club v. Butz , 349 F. Supp. 934, 937-39 (N.D. Cal. 1972) (tortious interference with advantageous relationship); Pacific Gas & Elec. Co. v. Bear Stearns & Co. , 791 P.2d 587, 595-98 (Cal. 1990) (intentional interference with contract and intentional interference with prospective economic advantage) .[9]

We need not delineate the precise limits the Petition Clause places on tort liability, however, because in the instant case, as in Whelan, "there does not appear to be even a potential for collision between the common law tort[s at issue] and the First Amendment." Whelan, 48 F.3d at 1254. In Protect Our Mountain Environment, Inc. v. District Court , 677 P.2d 1361, 1364-70 (Colo. 1984) (en banc), the Colorado Supreme Court squarely addressed the question of whether

---

[9] The proposition that the Petition Clause can place limits on tort liability is not foreclosed by the statement in Cardtoons, 208 F.3d at 889 n.4 (emphasis added), that "[o]utside of [the antitrust] context, the Petition Clause protects objectively reasonable lawsuits from being enjoined, but requires a court to look at the underlying statute to determine whether the initiator of the suit can be held liable." This statement highlights the distinction between the degree of petitioning immunity afforded litigants in Professional Real Estate Investors, 508 U.S. at 60, an antitrust case, and Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 748-49 (1983), a National Labor Relations Act dispute. It does not address whether the Petition Clause can limit tort liability. Indeed, the en banc court expressly states "we do not question the application of the right to petition outside of antitrust," rather, the court merely stresses "it is a bit of a misnomer to refer to [such an application] as the Noerr-Pennington doctrine." Cardtoons, 208 F.3d at 889. Moreover, to the extent this statement can be read to hold that the Petition Clause cannot limit tort liability, it is dicta. The holding in Cardtoons rested exclusively on the conclusion that a cease-and-desist letter to a private party does not constitute petitioning activity. 208 F.3d at 886-87, 893.

and to what extent the First Amendment limits liability for the tort of abuse of process. After carefully considering the <u>Noerr</u>-<u>Pennington</u> line of cases, the Colorado Supreme Court articulated an objectively-reasonable-litigation standard to strike the proper balance between the chilling effect lawsuits based on prior judicial proceedings have on the exercise of the right to petition and the damage to society that results from baseless litigation. <u>See</u> <u>id.</u> at 1368-69. Therefore,

> when, as here, a plaintiff sues another for alleged misuse or abuse of the administrative or judicial processes of government, and the defendant files a motion to dismiss by reason of the constitutional right to petition, the plaintiff must make a sufficient showing to permit the court to reasonably conclude that the defendant's petitioning activities were not immunized from liability under the First Amendment because: (1) the defendant's administrative or judicial claims were devoid of reasonable factual support, or, if so supportable, lacked any cognizable basis in law for their assertion; and (2) the primary purpose of the defendant's petitioning activity was to harass the plaintiff or to effectuate some other improper objective; and (3) the defendant's petitioning activity had the capacity to adversely affect a legal interest of the plaintiff.

<u>Id.</u> at 1369.

Scott has failed to make a sufficient showing that Hern's affidavit in support of the petition for seventy-two-hour treatment and evaluation was devoid of factual support or lacked any cognizable basis in law. As discussed, <u>see</u> <u>supra</u> Section III.A, even if all of the information Scott alleges Hern knew or should have known was false was redacted from the affidavit, the affidavit nonetheless would provide a reasonable factual basis for seeking Scott's involuntary

- 31 -

commitment pursuant to Colo. Rev. Stat. § 27-10-105(1)(b).  Because Scott has

failed to satisfy the standard set forth in Protect Our Mountain Environment, 677

P.2d at 1369, we affirm the district court's grant of summary judgment on the

abuse of process claim.  It necessarily follows that, regardless of whether the

standard articulated in Protect Our Mountain Environment provides more or less

protection for the right to petition than required by the Constitution, it provides

adequate protection in this case.

     With respect to the second tort claim at issue, "[f]alse imprisonment is an

unlawful restraint upon a person's freedom of locomotion, or the right to come and

go when or where one may choose."    Blackman v. Rifkin  , 759 P.2d 54, 58 (Colo.

Ct. App. 1988) (citing   McDonald v. Lakewood Country Club   , 461 P.2d 437 (Colo.

1969)).  The Colorado courts have not addressed the question of whether and to

what extent the tort of false imprisonment conflicts with the First Amendment

right to petition when applied to situations in which the restraint on freedom is the

proximate result of petitioning activity.  However, the requirement that the

restraint be unlawful precludes liability for false imprisonment when the restraint

is the result of a judicial order for temporary treatment and evaluation based on an

objectively reasonable petition and affidavit and issued in accordance with due

process.

This requirement effectively prevents any infringement on or chilling of Hern's First Amendment rights by the instant action. Viewing the evidence in the light most favorable to Scott, we conclude that there is no genuine issue of material fact as to whether the involuntary commitment of Scott was "an unlawful restraint upon [his] freedom of locomotion." Blackman, 759 P.2d at 58. Colorado statute authorizes a judge to order an individual to be taken into custody for a seventy-two-hour treatment and evaluation "[u]pon an affidavit which relates sufficient facts to establish that [the individual] appears to be mentally ill and, as a result of such mental illness, appears to be an imminent danger to others or to himself or appears to be gravely disabled." Colo. Rev. Stat. § 27-10-105(1)(b). As noted, see supra Section III.A, the facts related by Hern's affidavit were largely undisputed. Because those undisputed facts are more than sufficient to support the judge's initial finding that Scott posed a danger to himself and others as a result of his mental illness, Scott's involuntary commitment was lawful, and the district court properly dismissed the false imprisonment claim against Hern. Cf. Blackman, 759 P.2d at 58 (holding that emergency room personnel acted with lawful privilege when restraining an individual suffering from severe intoxication and head trauma, and therefore could not be held liable for false imprisonment).

## C

The district court also dismissed Scott's false imprisonment claims against Rundus, and Graybill, although for different reasons. We address each in turn.

Finding Graybill's certification for short-term commitment objectively reasonable and authorized by state law, the district court granted summary judgment in favor of Graybill. Graybill diagnosed Scott pursuant to court order, and, viewing the evidence in the light most favorable to Scott, his diagnosis was objectively reasonable. See supra Section II.C. Because Graybill's acts were lawful, the district court properly dismissed the claim of false imprisonment. See Blackman, 759 P.2d at 58 (Colo. Ct. App. 1988).

The district court's denial of Scott's motion to amend his false imprisonment claim against Rundus was improvident. See Grossman , 120 F.3d at 1126. In his first complaint, Scott stated a false imprisonment claim against Rundus for actions taken in her official capacity. The district court dismissed the claim as barred by the Colorado Governmental Immunity Act, Colo. Rev. Stat. § 24-10-106, because it amounted to an impermissible state common law tort claim against Boulder County. Scott's second amended complaint alleged that Rundus had acted in her individual capacity when committing the acts constituting false imprisonment. The district court failed to acknowledge that, unlike tort claims made against a public official acting in her official capacity, the Colorado

- 34 -

Governmental Immunity Act affords only qualified immunity from liability for claims made against a public official in her individual capacity. See Colo. Rev. Stat. § 24-10-118(2)(a); City of Lakewood v. Brace, 919 P.2d 231, 245-46 (Colo. 1996) (en banc). Specifically, it does not immunize a public employee's "willful and wanton" conduct. Colo. Rev. Stat. § 24-10-118(2)(a). In Brace, the Colorado Supreme Court held the determination of whether conduct is "willful or wanton" "is not susceptible to resolution at an early stage in the litigation process before significant discovery has been undertaken unless there are no disputed issues of fact," and therefore "[a] well pled complaint that an employee acted willfully and wantonly must await determination at trial on the merits." 919 P.2d at 246. Brace, however, did not distinguish the earlier case of Moody v. Ungerer, 885 P.2d 200, 204-05 (Colo. 1994) (en banc), in which the Colorado Supreme Court found as a matter of law that a complaint failed to adequately allege the defendant's actions were willful and wanton.

In the instant case, Scott's second amended complaint asserted that Rundus's improper actions in the prosecution of the civil commitment proceeding were willful and wanton. Given the tension between Brace and Moody as to the propriety of determining the adequacy of allegations of willful and wanton conduct at the motion to dismiss stage, we are reluctant to determine as a matter of law whether the facts alleged in Scott's complaint support his assertion of

- 35 -

willful and wanton conduct.  We therefore affirm on an alternative ground.  See

Griess v. Colorado , 841 F.2d 1042, 1047 (10th Cir. 1988).

State prosecutors are "absolutely immune for their actions in initiating a

prosecution."  Stepanek v. Delta County, 940 P.2d 364, 368 (Colo. 1997) (en

banc) (citations omitted).  In Stepanek, the Colorado Supreme Court held that a

county attorney who filed a petition initiating temporary guardianship proceedings

was absolutely immune from an action for attorney fees alleging those

proceedings were frivolous.  See id. at 368-69.  As discussed, see supra Section

II.B, Rundus's filing of the petition for evaluation and her investigation of Scott's

case are likewise actions "'intimately associated' with the adjudicatory process."

Id. at 368 (quoting Imbler, 424 U.S. at 430).  Because Rundus is absolutely

immune from a suit arising out of these actions, Scott's amendment of his false

imprisonment claim would have been futile.  See Grossman, 120 F.3d at 1126.

Thus, although the district court's reasons for denying his motion to amend were

erroneous, we affirm the judgment.

**D**

Scott's final state law claim alleged that Newell and Hern "conspired to

unreasonably intrude upon [his] private affairs . . . by unlawfully procuring and

using his confidential medical records without his consent in a manner which

would be highly offensive to a reasonable person."  (Appellant's App. at 95.)  The

- 36 -

district court dismissed without prejudice this claim for failure to allege publication, which the court stated was a necessary element of the tort of invasion of privacy in Colorado.

The Colorado Supreme Court has recognized, generally, a tort claim for invasion of privacy, see Rugg, 476 P.2d at 755, and has specifically recognized a "tort claim for invasion of privacy in the nature of unreasonable publicity given to one's private life," Ozer v. Borquez, 940 P.2d 371, 377 (Colo. 1997) (en banc). As the district court properly noted, one element of such a claim is publication. See id. Rather than arguing that he properly alleged publication, Scott argues that he is proceeding under an alternative form of invasion of privacy—intrusion upon the seclusion of another. This form of invasion of privacy "does not depend upon any publicity given to the person whose interest is invaded or to his affairs." Restatement (Second) of Torts § 652(B) cmt. a.

Even assuming the Colorado Supreme Court would recognize a claim for invasion of privacy in the nature of unreasonable intrusion upon the seclusion of another, see Borquez, 940 P.2d at 377 (acknowledging that while other states have adopted that tort, Colorado had not yet done so); see also Doe v. High- Tech Inst., Inc., 972 P.2d 1060, 1065 (Colo. Ct. App. 1998) (recognizing that tort as formulated in Restatement (Second) of Torts § 652B), we nonetheless find the allegations in Scott's complaint insufficient to survive a Rule 12(b)(6) motion to

dismiss. That is because Scott does not allege simply that Hern and Newell intruded upon his seclusion; he alleges they conspired to do so. "To establish a civil conspiracy in Colorado, a plaintiff must show: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) an unlawful overt act; and (5) damages as to the proximate result." Nelson v. Elway, 908 P.2d 102, 106 (Colo. 1995) (en banc) (citing Jet Courier Serv., Inc. v. Mulei, 771 P.2d 486, 502 (Colo. 1989)).

Once again exercising our authority to "affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court    ," Griess, 841 F.2d at 1047 (internal quotations and citation omitted), we conclude that Scott's complaint fails to allege any facts tending to show a meeting of the minds between Hern and Newell for the purpose of obtaining Scott's confidential medical records without his consent. Although Scott need not allege an express agreement, he must at the very least allege "a course of conduct and other circumstantial evidence . . . [providing] some indicia of agreement in an unlawful means or end." Schneider v. Midtown Motor Co., 854 P.2d 1322, 1326 (Colo. 1992) (internal quotations and citation omitted). Scott does allege that unnamed police officers gave Scott's medical records to "Hern and/or his agent defendant Newell." (Appellant's App.

- 38 -

at 92.)[10]  This allegation might support an inference that there was a meeting of the minds between the police officers and Hern or Newell.  It does not, however, support the inference that there was a meeting of the minds between Hern and Newell.  Nor can an agreement be inferred from the mere fact that Hern hired Newell to investigate Scott.  Finally, even if Scott's complaint could be read to allege that Newell, acting independently, obtained the medical records without Scott's consent and gave them to Hern, who then attached them to his affidavit knowing their unlawful provenance, "silent knowledge of an unlawful act is insufficient to establish the requisite agreement."  More v. Johnson, 568 P.2d 437, 440 (Colo. 1977) (en banc).  We therefore affirm on alternative grounds the judgment of the district court dismissing without prejudice the state law invasion of privacy claim against Hern and Newell.  We further note that, because the dismissal was without prejudice, Scott is free to pursue those claims in state court.

## IV

Appellant's motion to strike appellee's response briefs is **DENIED**.  The judgment of the district court is **AFFIRMED**.

---

[10]  This allegation is incorporated by reference into the section of Scott's complaint setting forth the invasion of privacy claim.