**F I L E D**

**PUBLISH**

**August 22, 2005**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DAVID A. PEREZ, SR.; TONY B.
VIGIL; HAROLD PORTER; and
JAMES D. PORTER,

     Plaintiffs-Appellees,

v.

T. GLENN ELLINGTON; JAMES
BURLESON; DAVID FERGESON;
RICKY A. BEJARANO; and JAVIER
LOPEZ, in their individual capacities,

     Defendants-Appellants,

-----------------------------------------------

TOM TALACHE, Governor of Nambe
Pueblo; HERBERT YATES, Tribal
Councilman of Nambe Pueblo;
TAXATION & REVENUE
DEPARTMENT, STATE OF NEW
MEXICO,

     Movants.

No. 04-2181

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. No. CIV-03-361 JP/LFG)**

---

John B. Pound of Long, Pound & Komer, P.A., Santa Fe, New Mexico, for
Defendants-Appellants.

Daniel Yohalem (Richard Rosenstock with him on the brief), Santa Fe, New Mexico, for Plaintiffs-Appellees.

———————————

Before **BRISCOE, McKAY**, and **MURPHY**, Circuit Judges.

———————————

**McKAY**, Circuit Judge.

———————————

This is an appeal from the district court's denial of summary judgment based on a claim of qualified immunity and absolute immunity. Defendants-Appellants are officials from the New Mexico Tax and Revenue Department (TRD). The underlying facts surrounding this lawsuit are detailed and quite involved. In light of the narrow issues presented by this appeal, we only recite the facts relevant to our holding.

Plaintiffs, a faction of the Nambé Pueblo Indian Tribe, entered into a contract with Mr. Ken Newton (acting for Gasplus, his gasoline distribution corporation) regarding the management of Nambé Pueblo's gasoline distribution business (Gasplus agreement). Plaintiffs entered into the Gasplus agreement on behalf of the Nambé Pueblo Development Corporation (NPDC). The NPDC is a registered gas distributor and can take advantage of the gas tax deduction for

Indian tribal distributors in the state of New Mexico.[1]  Mr. Newton had previously been investigated by TRD officials for his involvement with a fraudulent tax scheme designed to illegally take advantage of such tax breaks.

Defendants, officials from the TRD, were contacted by Nambé Pueblo's governor,[2] Tom Talache (Governor Talache), numerous times regarding the Gasplus arrangement.  In a series of clandestine meetings, Governor Talache voiced his concern to TRD officials about the validity of the Gasplus agreement. After hearing Governor Talache's accounts of Plaintiffs' involvement with Mr.

---

[1]N. M. Stat. Ann. § 7-13-4(F) (Michie 2004) states that

[the following] gasoline may be deducted from the total amount of gasoline received in New Mexico during the tax period:

gasoline received in New Mexico and sold by a registered Indian tribal distributor from a nonmobile storage container located within that distributor's Indian reservation, pueblo grant or trust land for resale outside that distributor's Indian reservation, pueblo grant or trust land; provided the department certifies that the distributor claiming the deduction sold no less than one million gallons of gasoline from a nonmobile storage container located within that distributor's Indian reservation, pueblo grant or trust land for resale outside that distributor's Indian reservation, pueblo grant or trust land during the period of May through August 1998; and provided further that the amount of gasoline deducted by a registered Indian tribal distributor pursuant to this subsection shall not exceed two million five hundred thousand gallons per month, calculated as a monthly average during the calendar year . . . .

[2]Governor Talache is part of a political faction within Nambé Pueblo opposed to Plaintiffs' faction and was upset with the Gasplus agreement, an agreement in which he took no part.

Newton and Gasplus, Defendants decided to investigate the matter.[3]

Fearing that a traditional investigation of the nation would prove difficult because of tribal sovereign immunity protections, Defendants decided to issue a jeopardy tax assessment against Plaintiffs. A jeopardy tax assessment is a method used by New Mexico tax officials in emergency situations when an official "reasonably believes that the collection of any tax for which a taxpayer is liable will be jeopardized by delay . . . ." N.M. Stat. Ann. § 7-1-59(A) (Michie 2004). Such jeopardy tax assessments give tax officials greater latitude to investigate potential tax offenders. In this case, by issuing the jeopardy tax assessments, Defendants were able to obtain access to Plaintiffs' financial records.

Defendants' decision to issue the jeopardy tax assessments was buttressed by an opinion from the Bureau of Indian Affairs (BIA) that found the Gasplus agreement invalid. After some preliminary investigation, Defendant Fergeson agreed with the BIA's conclusion regarding the invalidity of the Gasplus agreement, and he reported this to Defendant Ellington who, in turn, issued a lien against Plaintiffs' property pursuant to the New Mexico Tax Administration Act.

Upon completion of its audit, however, Defendants determined that there was nothing illegal about Plaintiffs' agreement with Gasplus. Consequently, TRD

---

[3]Defendant Ellington, a TRD official, allegedly knew of the factional animosity within the Nambé Pueblo between Governor Talache and the previous tribal administration which included the Plaintiffs.

recommended an abatement of the jeopardy tax assessments. The abatements were signed on March 11, 2002, by a TRD official and authorized a month later. However, the liens associated with the tax assessments were not released until July 1, 2003, more than one year later.[4]

As a result of the above, Plaintiffs brought various claims under 42 U.S.C. §§ 1981, 1982, and 1983. Defendants asserted the defense of qualified and absolute immunity and moved for summary judgment on each of the claims. The district court granted summary judgment for Defendants on all of Plaintiffs' claims except their § 1983 claim based on the First Amendment right of association. The district court held there to be "a question of material fact as to whether the Defendants acted in an objectively reasonable manner," Aplt. App., Vol. I, at 413 (Dist. Ct. Order), from which a reasonable juror could find a deprivation of constitutionally protected rights by retaliating against Plaintiffs for their association with Mr. Newton. The district court also denied Defendants' claim of absolute immunity. Defendants brought this interlocutory appeal from the denial of summary judgment on that claim.

Generally, we have jurisdiction to review purely legal questions that arise from the denial of qualified immunity. *See Mitchell v. Forsyth*, 472 U.S. 511, 528

_____

[4]Typically, the tax liens associated with the jeopardy assessments are released at the same time as the jeopardy assessment abatement.

(1985). Our inquiry focuses on "whether the facts alleged . . . support a claim of a violation of clearly established law." *Id.* at 528 n.9. If our *de novo* review of Plaintiffs' version of the facts reveals that they do not amount to a violation of a clearly established right, we can reverse on an interlocutory basis. Conversely, if Plaintiffs' version of the facts amounts to the violation of a clearly established constitutional right, we lack jurisdiction to review the denial of summary judgment on an interlocutory basis if Plaintiffs' version of the facts is disputed. We review *de novo* a district court's denial of a summary judgment motion raising qualified immunity questions. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).

It is first necessary to determine exactly which clearly established constitutional right Plaintiffs claim Defendants violated. In this appeal, Plaintiffs allege Defendants' retaliatory actions violated their First Amendment right to association. The First Amendment bars retaliation for exercising the right of association. *See DeLoach v. Bevers*, 922 F.2d 618, 620 (10th Cir. 1990). Although retaliation is not expressly discussed in the First Amendment, it may be actionable inasmuch as governmental retaliation tends to chill citizens' exercise of their constitutional rights. *ACLU of Md., Inc. v. Wicomico County*, 999 F.2d 780, 785 (4th Cir. 1993) (citing *Perry v. Sindermann*, 408 U.S. 593, 597 (1972)). First Amendment retaliation claims are generally brought in the public

employment context. *Connick v. Myers*, 461 U.S. 138 (1983); *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968).

In this case, Plaintiffs are not employed by Defendants, and no contractual relationship exists between the parties. When the retaliation claim is not grounded in the public employment context, we employ the substantive standard we announced in *Worrell v. Henry*, 219 F.3d 1197 (10th Cir.2000). Therefore, to establish a violation of the First Amendment right to associate, Plaintiffs must demonstrate: "(1) that [they were] engaged in constitutionally protected activity; (2) that [Defendants'] actions caused [Plaintiffs] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that [Defendants'] adverse action was substantially motivated as a response to [Plaintiffs'] exercise of constitutionally protected conduct." *Worrell,* 219 F.3d at 1212 (internal quotation marks and citations omitted).

In this case, Plaintiffs have alleged that they were unconstitutionally discouraged from associating with non-tribal members because of Defendants' retaliatory action. Plaintiffs support this allegation citing Defendants' quick issuance of the jeopardy tax assessments, Defendants' failure to follow the normal procedures for issuing jeopardy tax assessments, and Defendants' failure to timely

release the liens after their abatement.[5]

Assuming the factual allegations above are true, it is necessary to determine whether the law is so clearly established that under such circumstances persons of "ordinary firmness" would be deterred from associating. Or, in other words, whether the type of conduct above is so egregious that an official would be on clear notice that his actions would deter the ordinary person from continuing in that association. From the facts of this case, we hold that a reasonable factfinder could conclude that Defendants caused Plaintiffs an injury sufficient to meet that standard; Defendants' quick decision to issue jeopardy tax assessments against Plaintiffs could, if ultimately found by the jury to be the case, chill a reasonable person from associating with an outside distributor who, as the facts of this case show, happened to be at odds with Defendants. *See Mimics, Inc. v. Village of Angel Fire*, 394 F.3d 836, 847 (10th Cir. 2005).

As to the third element of Plaintiffs' First Amendment retaliation claim, Defendants' extreme delay in releasing the liens on Plaintiffs' property evidences a retaliatory motive. *See DeLoach*, 922 F.2d at 620 ("An act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper.")

---

[5]Plaintiffs claim to have experienced various problems with their credit because of the liens.

(citation omitted).

We conclude that "the facts alleged . . . support a claim of a violation of clearly established [First Amendment right to associate] law." *See Mitchell*, 472 U.S. at 528 n.9. We point out that Defendants may be able to rebut Plaintiffs' allegations at trial. Defendants may be able to convince the trier of fact that their actions were all based on a good faith belief that Plaintiffs were involved in an illegal agreement with Gasplus and that Defendants' extreme time lapse in releasing the liens after the agreement was determined to be legal was purely a result of Defendants' negligence. However, because the record contains evidence from which a factfinder could conclude that Plaintiffs have established a violation of clearly established law, the district court did not err in denying Defendants' motion for summary judgment as to Plaintiffs' First Amendment claim.

Defendants also appeal the district court's ruling that they are not entitled to absolute immunity. Defendants ask to be treated like prosecutors because of the unique nature of their positions as tax assessment officials and to find them absolutely immune from suit. Aplt. Br. at 28. We find this argument to be without merit, and affirm the district court's ruling.

We review determinations of absolute immunity *de novo*. *Scott v. Hern*, 216 F.3d 897, 908 (10th Cir. 2000). State officials are absolutely immune from suit if they "perform functions analogous to those of a prosecutor in initiating and

pursuing civil and administrative enforcement proceedings." *Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1490 (10th Cir. 1991) (quotation omitted). Absolute immunity does not extend to actions "that are primarily investigative or administrative in nature" but, instead, attaches only to actions which a prosecutor must perform while fulfilling his duty as an officer of the court. *Id.* (quotation omitted).

We apply a functional approach to determine whether absolute immunity applies to a defendant. This approach requires us to examine "the nature of the function performed, not the identity of the actor who performed it." *Malik v. Arapahoe County Dept. of Social Services*, 191 F.3d 1306, 1314 (10th Cir. 1999) (quotation omitted). "The more distant a function is from the judicial process, the less likely absolute immunity will attach." *Snell v. Tunnell*, 920 F.2d 673, 687 (10th Cir. 1990). The state official claiming absolute immunity has the burden of showing why absolute immunity should apply instead of the more common qualified immunity. *Forrester v. White*, 484 U.S. 219, 224 (1988).

As a general proposition, state officials, like Defendants acting in a merely investigatory capacity, are not entitled to absolute immunity. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) ("A prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to

absolute immunity."). Applying the law regarding determinations of absolute immunity to the facts of this case, we agree with the district court's opinion on this point.

The district court's denial of summary judgment regarding Plaintiffs' First Amendment right of association claim is hereby **AFFIRMED**. The district court's denial of absolute immunity is also **AFFIRMED**.